**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. _26-mj-8574-BER_____

**UNITED STATES OF AMERICA**

v.

**MICHAEL S. FRAZIER,**
**MATTHEW JOSEPH CHERETTE, and**
**ANTHONY M. LABATE**

_____/

**CRIMINAL COVER SHEET**

1.  Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?  ☐ Yes  ☑ No

2.  Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? ☐ Yes ☑ No

3.  Did this matter involve the participation of or consultation with now Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? ☐ Yes ☑ No

4.  Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? ☐ Yes ☑ No

5.  Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? ☐ Yes ☑ No

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

BY: _____

DANIEL E. FUNK
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.      0592501
500 South Aust alian Avenue, Suite   00
West Palm Beach, Florida 33401
Tel:      305-905-7509
Fax:
Email:  daniel.funk@usdoj.gov

AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| MICHAEL S. FRAZIER, | ) | Case No.   26-mj-8574-BER |
| MATTHEW JOSEPH CHERETTE, and | ) | |
| ANTHONY M. LABATE, | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___between May 29, 2026 and July 22, 2026___ in the county of ___Palm Beach___ in the ___Southern___ District of ___Florida___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846. | Conspiracy to possess a controlled substance with intent to distribute |

FILED BY_____TM_____D.C.

Jul 23, 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

*Det. Lt. Timothy Ford*

Complainant's signature **Tyler**

Timothy J. Ford, DEA TFO

Printed name and title

Sworn to and attested to me by applicant by telephone (Facetime) per the requirements of Fed. R. Crim. P.4 (d) and 4.1.

Digitally signed by
Bruce Reinhart
Date: 2026.07.23
00:15:09 -04'00'

Date: _____

Judge's signature

City and state:   ___West Palm Beach, Florida___   ___U.S. Magistrate Judge Bruce E. Reinhart___

Printed name and title

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR CRIMINAL COMPLAINT**

I, Timothy J. Ford, being first duly sworn, hereby depose and state as follows:

1.      This affidavit is made in support of a criminal complaint charging MICHAEL S. FRAZIER, MATTHEW JOSEPH CHERETTE, and ANTHONY M. LABATE, with conspiracy to possess a controlled substance with intent to distribute, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(c), and 846.

2.      I am a Task Force Officer with the United States Drug Enforcement Administration ("DEA"). Your affiant is currently assigned to the DEA Newark, New Jersey Division Enforcement Group 5. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing criminal laws and duly authorized by the Attorney General to request search warrants. I have been a Task Force Officer with the DEA since 2024. Since 2019, I have served as a Lieutenant within the Union Township Police Department in Union, New Jersey. Previously, I served within the Union Township Police Department as a Sergeant from 2014 to 2019, and as a patrol officer from 2005 to 2014.

3.      During my law enforcement career, I have participated in hundreds of investigations and arrests, including numerous narcotic related investigations and arrests. During these investigations, I have conducted or participated in surveillance, undercover transactions, debriefings of informants, review of taped conversations, and the execution of search warrants.

4.      The information contained in this affidavit is based on my own personal knowledge as well as information provided to me by other law enforcement officers and agents. This affidavit is intended to show merely that there is sufficient probable cause for the requested arrest warrants and does not set forth all my knowledge about this matter. The statements contained

1

in this affidavit are based upon my investigation, information provided by other sworn law enforcement officers, and my experience and training as a law enforcement officer.

## PROBABLE CAUSE

5.      During April 2026, the Drug Enforcement Administration (DEA) New Jersey Field Division (NJFD) Enforcement Group 5 (EG5) began investigating a Drug Trafficking Organization (DTO) in New Jersey. The DTO stole DEA registrations from legitimate laboratories and stole identities and bank accounts to purchase Gamma-Butyrolactone (GBL). GBL is an industrial chemical and is illicitly used as a substitute and chemical precursor to Gamma Hydroxybutyric Acid (GHB) which is a Schedule I controlled substance (depressant). GBL is converted into GHB after oral consumption. GHB has been popular in club scenes since the early 1990's and has been known as the "date rape drug." GBL is used in illicit means for its euphoric and sedative effects. GBL is mainly self-ingested with an average dose measuring 1ml. GBL has a faster onset of effects and longer duration compared to GHB. GBL is abused due to its intoxicating effects.

6.      GBL is a List 1 chemical under the Controlled Substances Act. GBL may be treated as a schedule I controlled substance analogue for the purpose of federal law pursuant to Title 21, United States Code, Section 813.

7.      During the investigation, DEA agents determined that one stolen DEA registration belonged to Anresco NJ Labs located at 201 Blackford Ave., Middlesex, New Jersey. During the months of March through May 2026, the individual(s) responsible for stealing the registration purchased more than 1,000 (one-thousand) pounds of GBL from several chemical companies located in the United States. While the GBL was in transit to the lab, the individual(s) responsible for the order diverted some shipments to Federal Express offices to hide the illegal order from workers at the legitimate laboratory. An order in excess of 800 (eight-hundred) pounds was

2

diverted as the delivery truck arrived on scene to make delivery. The individuals(s) had the truck drive several blocks away and unloaded into a cargo van vehicle. The undersigned verified with Anresco NJ Labs that the laboratory did not order GBL and its registration information had been fraudulently used without authorization.

8.     On May 29, 2026, I was alerted by a chemical company named GreenChem Industries located at 1401 Forum Way #600, West Palm Beach, Florida 33401, for a suspicious order inquiry. GreenChem received an email from "Damien Novello" using email "procurement@anrescolaboratories.com" in which he requested to purchase Gamma-Butyrolactone (GBL). In the documents provided to GreenChem "Damien Novello" purported to be a procurement manager for Anresco Laboratories.

9.     The email and documents provided the following information; Anresco Laboratories, 1375 Van Dyke Avenue, San Francisco, California 94124, procurement manager Damien Novello, and phone number 415-549-6977 (later determined to be a "burner phone").

10.     I began investigating the legitimacy of the documents and email provided to GreenChem. Anresco Laboratories located at 1375 Van Dyke Avenue, San Francisco, California 94124 is a sister company to Anresco NJ Labs located at 201 Blackford Ave., Middlesex, New Jersey 08846. It is suspected that the individual(s) who fraudulently obtained GBL using the New Jersey location were involved in the current inquiry using the California location. Anresco Laboratories in California and New Jersey both had their DEA registrations located on their website where individual(s) could easily steal and utilize them. The registrations are not intended to be publicly displayed to avoid the theft and use of the registrations in a nefarious manner.

11.     On June 15, 2026, I contacted Anresco Laboratories CEO "D.E." to verify the authenticity of the inquiry. D.E. stated that no employee by the name of "Damien Novello" worked for Anresco Laboratories. D.E. was asked if the phone number provided on the inquiry was a phone

3

owned and operated by Anresco Laboratories, and he advised that the phone did not belong to his company or employees. D.E. advised that Anresco Laboratories has never ordered GBL from any chemical company in the past and that the inquiry purporting to be Anresco with a purchase from GreenChem is fraudulent. D.E. also stated that the email used by "Damien Novello" is not an Anresco Laboratories email. I was able to determine that the email used by "Damien Novello" was created on May 18, 2026, a mere 11 (eleven) days before the inquiry was sent to GreenChem.

12. The phone was activated through Boost Mobile on May 16, 2026, thirteen (13) days prior to the inquiry being sent to GreenChem. The subscriber, Jason Lawson, resides in Brooklyn, New York, yet activated the phone with an area code of 415. 415 area code is San Francisco, California, where Anresco Laboratories is located. It is believed that the area code was selected so when documents were received by GreenChem it would appear to include a legitimate phone number. If the individual(s) provided a New York City area code, it would cause further investigation by GreenChem and possibly result in the cancellation of the order.

13. On July 2, 2026, "Damien Novello" sent an email to GreenChem and attached a purchase order for four hundred (400) kilograms of GBL with an estimated purchase time of two (2) weeks.

14. On July 13, 2026, a payment was sent to GreenChem in the amount of $5,987.47 for the purchase of four-hundred (400) kilograms of GBL.

15. The delivery address for the four-hundred (400) kilograms of GBL was 1375 Van Dyke Avenue, San Francisco, California 94124.

16. Law Enforcement Officers later conducted a controlled delivery of four-hundred (400) kilograms of sham GBL.

4

17.     The four-hundred (400) kilograms of sham GBL were placed in two (2) fifty-five (55) gallon drums. The drums will be placed on a black plastic pallet and will be shrink-wrapped to the pallet with a tracker affixed.

18.     On July 22, 2026, XPO freight contacted "Damien Novello" on the "burner phone" at approximately 0735hrs and advised the package would be delivered to 1330 Van Dyke Avenue, San Francisco, California at approximately 0900 hours. Shortly after the phone call was placed, I observed thru a court-ordered ping that the "burner phone" was heading North, from San Jose in the direction of San Francisco. Within approximately half an hour the BURNER PHONE was pinging within a 5-block radius of 1330 Van Dyke Avenue.

19.     On July 22, 2026, at approximately 0830hrs, I observed a white Ford van, bearing California tag 60307M2, occupied by two white males park at the corner of Ingall Street and Van Dyke Ave. The two males parked approximately 500 feet east from 1330 Van Dyke Avenue and were observed making several phone calls and chain-smoking cigarettes while staring down the street. The driver of the vehicle was later identified as Anthony LABATE and the passenger was later identified as Mathew CHERETTE.

20.     CHERETTE exited the white Ford van and stood on foot at the intersection at approximately 0840hrs chain-smoking cigarettes and using his phone while staring down the street. Every time a truck drove on the street, CHERETTE would walk in the direction to check and see if it was an XPO truck with the intended shipment of GBL. CHERETTE paced the street while LABATE remained in vehicle staring at 1330 Van Dyke Avenue for approximately twenty (20) minutes. At 0840hrs a fresh ping from the "burner phone" came thru and showed it was pinging at the location where the white Ford van was parked.

5

21.     At approximately 0900 hours, I observed a white KIA SUV bearing California – 9MTH494 occupied by a single black male with dreads, later identified as Michael FRAZIER pull up along side the white Ford van. LABATE opened the driver's door of white Ford van and grabbed a small white item from FRAZIER in the white KIA SUV. The white KIA SUV proceeded to drive around the block and park on a parallel street, Underwood Avenue.

22.     The white Ford Van, driven by LABATE, then pulled off from its spot and pulled approximately 500 feet west of 1330 Van Dyke Avenue. At approximately 0920hrs the XPO delivery truck pulled onto Van Dyke in the area of the 1330 Van Dyke Avenue. CHERETTE exited the white Ford van and walked up to the cab of the delivery truck. CHERETTE waved the truck down the street slightly so it could drop the shipment curbside in the vicinity of the 1330 Van Dyke Avenue. The XPO driver opened the rear of the truck and lowered the shipment and placed it curbside while CHERETTE directed him.

23.     At approximately 0930hrs, the XPO driver re-entered the truck and pulled off. At this point, LABATE exited white Ford van and opened the trunk. LABATE and CHERETTE gathered plywood that was inside the rear of the vehicle along with two small metal ramps, approximately 6 feet long, and two dollies. LABATE and CHERETTE set up the ramps and the plywood in order to get the barrels of GBL into the rear of the white Ford van. As LABATE and CHERETTE started to unwrap the shrink wrap from the two (2) barrels and positioned the dollies close to the pallet, FRAZIER arrived in white KIA SUV and parked behind white Ford van. FRAZIER walked up to LABATE and CHERETTE and yelled for them to start putting the barrels into the van faster. Both barrels had large stickers on them stating the barrels contained Gamma Hydroxybutyric Acid (GHB). The following are images of the barrels with markings (at the time of shipping:

6



24.    All three males grabbed the dollies and placed one of the barrels on a dolly and they pushed it up the ramp into the rear of the van. FRAZIER and CHERETTE exited white Ford van and walked to the second barrel and began to place it on the second dolly. As they did, LABATE was inside the van positioning the first barrel for correct placement.

25.    At this point, members of San Francisco and New Jersey DEA moved in and detained all three males. FRAZIER was found to be in possession of a fraudulent Connecticut driver's license with his correct pedigree. A check of Connecticut DMV confirmed the license was fraudulent. FRAZIER was also in possession of a New York DL in the name used to open the Boost Mobile phone account for the "burner phone" being tracked using the "ping warrant" data.

7

The New York driver's license was fraudulent and had a picture with a close resemblance to FRAZIER. FRAZIER was found to be in possession of three Apple iPhones with one being the "burner phone."

26.     LABATE was found to be in possession of a bag of a white rocky substance suspected of being methamphetamine and confirmed by LABATE as being methamphetamine. The substance was found in his right pants pocket and weighed approximately 37 grams. LABATE was found to be in physical possession of a fraudulent Oklahoma driver's license and a fraudulent New York license utilizing names completely different than his own.

27.     CHERETTE was found to be in possession of a fraudulent Nevada drivers license in the name of "Damien Novello" and a Mastercard bank card using the same name. The Novello identity was used to place the order for the 400 (four-hundred) kilograms of GBL and used in email correspondence. CHERETTE also used the Novello identification to accept delivery of the GBL from XPO. Inside the passenger compartment of white Ford van, CHERETTE had a small black bag that he advised was his and inside was a bag of methamphetamine weighing approximately 30 grams along with a crack pipe and used hypodermic needles. In the center console was a clear lemonade bottle with a few ounces of a clear liquid that had a strong chemical odor.

28.     Agents read all three subjects their Miranda rights and they acknowledged they understood their rights.

29.     CHERETTE spoke with TFO Sean Campbell and me after waiving his rights. CHERETTE advised that he and FRAZIER rented a black Chrysler van in New York City approximately two weeks prior and drove from New York City to San Francisco, which coincides with pings from the "burner phone." FRAZIER told CHERETTE that he needed to take a road trip with him to pick up GBL. Upon arriving in California, they switched into another rental van. After a few days, LABATE flew out to San Francisco from New York City and the three stayed together

8

in a hotel at first and then separated to other hotels. CHERETTE advised that all parties were aware their mission was to pickup two barrels of GBL and bring it back to New York City once it was delivered.

30. CHERETTE advised that during their stay in California he would consume approximately an ounce of GBL every day and that LABATE also drank GBL. CHERETTE stated that the lemonade bottle found in white Ford van had GBL in it and that he would drink from it while in the vehicle. CHERETTE advised that LABATE is involved in the club scene along with him and they both consume GBL on a regular basis.

31. CHERETTE advised that LABATE previously helped pick up GBL while in New Jersey a few months prior while FRAZIER drove. LABATE advised CHERETTE that he was paid in cash and a few liters of GBL by FRAZIER. LABATE was going to be paid in money and GBL for this deal.

32. CHERETTE advised that all three parties knew that the GBL was for human consumption and that it is highly sought after in New York City club scenes.

33. We interviewed FRAZIER after he waived his right to counsel and he advised that he was instructed by a man (known to law enforcement) to travel to San Francisco and pick up GBL. He was provided the fraudulent driver's licenses and advised to get the "burner phone" prior to the trip. FRAZIER advised he worked with the man a few months prior in New Jersey when they picked up 400 (four-hundred) kilograms of GBL and he was paid approximately 70 thousand dollars for his involvement. He stated that CHERETTE participated in this operation along with another person.

34. FRAZIER advised that he knew the GBL is used for human consumption. FRAZIER stated that he was going to be paid "a third" for this operation but did not elaborate on what that meant.

9

35.     FRAZIER and CHERETTE both stated they were going to leave in the van after this delivery was completed and head back to New York City with the GBL and handoff to "Mark" who turns around and sells it for human consumption.

**CONCLUSION**

Based on the facts outlined above, your affiant believes there is a probable cause to charge MICHAEL S. FRAZIER, MATTHEW JOSEPH CHERETTE, and ANTHONY M. LABATE, with conspiracy to possess a controlled substance with intent to distribute, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(c), and 846.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

*Det. Lt. Timothy Ford*

TIMOTHY J. FORD
Task Force Officer
Drug Enforcement Agency

Sworn to me via Telephone-FaceTime by the affiant in accordance with the requirements of this ___ day of July 2026.

Digitally signed by
Bruce Reinhart
Date: 2026.07.23
00:15:31 -04'00'

HON. BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**:   MICHAEL S. FRAZIER

**Case No**:

Conspiracy to possess a controlled substance with intent to distribute

Title 21, United States Code, Sections, 841(a)(1), 841(b)(1)(C), and 846
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years up to life
* **Max. Fine:** $1,000,000
* **Mandatory Special Assessment:** $100

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**:   MATTHEW JOSEPH CHERETTE

**Case No**:

Conspiracy to possess a controlled substance with intent to distribute

Title 21, United States Code, Sections, 841(a)(1), 841(b)(1)(C), and 846
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years up to life
* **Max. Fine:** $1,000,000
* **Mandatory Special Assessment:** $100

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**:   ANTHONY M. LABATE

**Case No**:

Conspiracy to possess a controlled substance with intent to distribute

Title 21, United States Code, Sections, 841(a)(1), 841(b)(1)(C), and 846
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years up to life
* **Max. Fine:** $1,000,000
* **Mandatory Special Assessment:** $100

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**